# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| STEVE ROGALSKI, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22CV738 HEA |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff Steve Rogalski for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff has filed multiple applications for disability benefits. The initial Administrative Law Judge (ALJ) issued an unfavorable hearing decision on November 21, 2016. A request for review of the unfavorable hearing decision was filed and denied on November 14, 2017 by the Appeals Council. Plaintiff then filed

an application for a period of disability, disability insurance benefits, and

supplemental security income on December 27, 2016. Plaintiff amended his

alleged onset date of disability to April 30, 2018. The claims were initially denied

on April 30, 2018. Subsequent to a hearing, an ALJ issued an unfavorable hearing

decision on October 25, 2019.

On October 15, 2019, Plaintiff filed his current Title XVI application for

supplemental security income. On December 4, 2019, Plaintiff protectively filed a

Title II application for a period of disability and disability insurance benefits

alleging an onset date of disability beginning October 26, 2019. These claims were

denied initially on February 11, 2020, and again upon reconsideration on June 15,

2020. Thereafter, Plaintiff filed a written request for hearing received on June 30,

2020. On April 15, 2021, another hearing was held in front of an ALJ, and Plaintiff

was represented by counsel. Plaintiff amended his alleged onset date to November

4, 2019, which corresponds to the date of his most recent unfavorable decision.

In an opinion issued on June 9, 2021, which is the one at issue here, the ALJ

determined that Plaintiff was not under a disability at any time from his alleged

onset date of November 4, 2019. The ALJ found that Plaintiff had not engaged in

substantial gainful activity since the alleged onset date. The ALJ found Plaintiff

had the severe impairments of bipolar disorder without psychotic features, major

depressive disorder without psychotic features, generalized anxiety disorder, panic

disorder, agoraphobia, attention deficit hyperactivity disorder, left rotator cuff

tendinitis, mild subluxation and tendinosis of the right knee, and morbid obesity. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations:

> …[Plaintiff] cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. [Plaintiff] can perform no more than occasional balancing on narrow, slippery, or erratically moving surfaces and he can engage in occasional kneeling, crouching and crawling. He is limited to no more than occasional overhead reaching, pushing, or pulling bilaterally. [Plaintiff] can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. He cannot work at a fast pace such as an assembly line, but can stay on task and meet reasonable production requirements in an environment that allows him to maintain a flexible and goal-oriented pace. [Plaintiff] is further limited to work that requires only occasional changes in the work setting which are introduced gradually and he can have occasional interaction with co-workers and supervisors. [Plaintiff] cannot interact with the public, but there is no limitation on superficial contact with the public. He is limited to no more than occasional use of public transportation.

The ALJ found Plaintiff is unable to perform his past relevant work as a corrections officer. However, based on vocational expert testimony, the ALJ found Plaintiff is able to perform the requirements of representative occupations such as cleaner (hospital); floor technician; or kitchen helper, which jobs exist in

significant numbers in the national economy, when considering the Plaintiff's age, education, work experience, and RFC.

Plaintiff filed a timely Request for Review of Hearing Decision, and the Appeals Council denied the request for review. Plaintiff has exhausted all administrative remedies. The decision of the ALJ stands as the final decision of the Commissioner.

### Hearing Testimony

Plaintiff, who was born on July 28, 1982 and was 38 years old at the time of his hearing, was represented by counsel at this hearing before the ALJ. Plaintiff, who has a high school education, testified he is married and lives with his wife. He has Medicaid, receives food stamps and help from family, but no other income.

Plaintiff is primarily right-handed. He testified he has significant pain in his left shoulder every day, mainly his rotator cuff. He has tried physical therapy for his shoulder pain that helped some, but he no longer does physical therapy, so the pain is back to where it was before. Plaintiff testified his left shoulder pain can affect his daily activities, like carrying groceries or taking care of normal hygiene, if he moves too quickly or the wrong way. To relive pain, he tries to avoid using it as much as he can and when he does this, the pain goes away rather quickly. He also has pain issues and stiffness in his knees, especially when he sits for an extended period of time, like on a long car drive. He can sit without pain for approximately fifteen to twenty minutes.

Plaintiff testified he has received mental health treatment from Dr. Adagio, who diagnosed him with schizophrenia and bi-polar disorder. In early 2022, he started seeing Dr. Spalding, who prescribed him Seroquel. Plaintiff stopped taking Seroquel because he experienced side effects of agitation, irritability, frustration, drowsiness and aggression. For his current medications, Plaintiff testified he experiences drowsiness, fatigue, and memory loss. He struggles with concentration issues, like he will go into a room and not remember why he is there and forgets to write things down. His wife helps him to remember things, like doctors' appointments and tasks to complete. For his medications, he reads the bottles each morning to remind him what he needs to take.

For sleeping, Plaintiff testified he sleeps a minimal of twelve to fourteen hours a day, which is broken up throughout the day. After three to four hours, he needs to sleep. Plaintiff testified he has a sense of hopelessness, cries a lot and just wants to stay in bed.  He also suffers from depression, loss of energy and panic attack that is triggered from anxiety and overthinking. He avoids big crowds, family gatherings and even being with friends. Plaintiff testified he struggles with irritability and has difficulty controlling his emotions, like snapping at his wife by saying mean and derogatory things to her. He also has issues with apathy, like when he lost his son in 2017, he has "yet to shed a tear for him because it doesn't [faze] me in anyway." These feeling are also present in the workplace, such as

when a co-worker is hurt or injured, it makes him feel better to know they are in a worse position than him.

A Vocational Expert (VE) testified, and the ALJ posed a hypothetical with limitations identical to the RFC found here. The VE testified, that person could perform jobs, like cleaner (hospital); floor technician; or kitchen helper. Although the VE's testimony is inconsistent with the information contained in the DOT, there is a reasonable explanation for the discrepancy. The vocational expert testified that the DOT does not distinguish between reaching levels, and that based on her experience and professional knowledge, these jobs do not require more than occasional overhead reaching. Based on the testimony of the vocational expert the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

A second hypothetical posed, assuming the same facts as the first except the individual is able to perform work only at a light exertional level. The VE testified that individual could perform counter attendant, routing clerk and mail sorter. The VE testified these jobs exist in significant number in the national economy. A third hypothetical posed, assuming the same facts as the first except the individual is able to perform work only at a sedentary level. The VE testified that individual could perform document preparer, surveillance system monitor, and addresser. The VE testified these jobs exist in significant number in the national economy. When

asked if Plaintiff could perform these jobs at twenty percent off task, the VE testified in the negative.

## **Legal Standard**

To be eligible for benefits under the Social Security Act, Plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or

medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the

Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; See also, Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations.  *See* 20 C.F.R. § 404.1545.  An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Decision of the ALJ

At Step One of the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of bipolar disorder without psychotic features, major depressive disorder without psychotic features, generalized anxiety disorder, panic disorder, agoraphobia, attention deficit hyperactivity disorder, left rotator cuff tendinitis, mild subluxation and tendinosis

of the right knee, and morbid obesity. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations: Plaintiff cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. Plaintiff can perform no more than occasional balancing on narrow, slippery, or erratically moving surfaces and he can engage in occasional kneeling, crouching and crawling. He is limited to no more than occasional overhead reaching, pushing, or pulling bilaterally. Plaintiff can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. He cannot work at a fast pace such as an assembly line but can stay on task and meet reasonable production requirements in an environment that allows him to maintain a flexible and goal-oriented pace. Plaintiff is further limited to work that requires only occasional changes in the work setting which are introduced gradually and he can have occasional interaction with co-workers and supervisors. Plaintiff cannot interact with the public, but there is no limitation on superficial contact with the public. He is limited to no more than occasional use of public transportation.

10

At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work. At Step Five, based on VE testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such cleaner (hospital); floor technician; or kitchen helper. Although the VE's testimony is inconsistent with the information contained in the DOT, the ALJ gave a reasonable explanation for the discrepancy. To determine the extent to which his limitations erode the unskilled medium occupational base, the ALJ concluded that, based on the testimony of the VE considering Plaintiff's age, education, work experience, and RFC, he is capable of making a successful adjustment to other work, such as the jobs stated above, that exist in significant numbers in the national economy. Therefore, the ALJ found Plaintiff not disabled.

## **Statement of the Issues**

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issue here is whether substantial evidence supports the ALJ's determination of Plaintiff's RFC and whether the ALJ properly considered medical opinion evidence and Plaintiff's subjective complaints.

## **Discussion**

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the

ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

**Was the RFC is Supported by Substantial Evidence and Did the ALJ Properly Consider Medical Opinion Evidence and Plaintiff's Subjective Complaints**

Plaintiff argues that the RFC finding is not supported by substantial evidence, and the ALJ did not properly consider Plaintiff's subjective complaints and the medical opinion evidence of Plaintiff's treating psychiatrist, Joseph Spalding, D.O.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* at 932 (citation omitted). "[I]n evaluating a

claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

When evaluating medical opinion evidence, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions, including those from Plaintiff's medical sources. *See* 20 C.F.R. § 404.1520c(a). Under the regulations, the ALJ focuses on the persuasiveness of each medical opinion using the five regulatory factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other relevant factors. *Id.* § 404.1520c(a)-(c). The most important factors the ALJ considers are supportability and consistency. *See Id.* § 404.1520c(b).

In *Polaski*, the Eighth Circuit held, in evaluating a claimant's subjective complaints and related functional limitations, the ALJ should consider: the absence of objective medical evidence; the claimant's prior work record; and observations by third parties (including treating and examining physicians) regarding such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factor; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984).

13

The Eighth Circuit recognized "[t]he ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *See Estes*, 275 F.3d at 724. If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ acknowledged Plaintiff's impairments and his complaints of pain, finding some restrictions were necessary. The ALJ discussed the overall medical record at length. However, after consideration of the record as a whole, the ALJ declined to find such limitations to warrant a finding of disability. For instance, the ALJ acknowledged an orthopedic examination of Plaintiff on April 27, 2021 for complaints of bilateral knee and shoulder pain, but explained physical examination showed a minimally antalgic gait with right knee slight patellar tilt, minimal crepitus, and good range of motion. Diagnostic findings document November 2, 2020 right knee x-rays that showed no acute osseous abnormality or other significant findings. A January 21, 2021 MRI scan of the right knee showed mild lateral subluxation and mild lateral tilt of the patella on the trochlear groove, mild tendinosis of the proximal patellar tendon with no ligament tears. Further, left shoulder examination revealed positive impingement sign, tenderness, and pain with abduction but otherwise full flexion, abduction and rotation reported. A left

14

shoulder MRI scan performed May 5, 2021 revealed mild acromioclavicular degenerative inflammatory changes with minimal tendinosis. The ALJ noted physical examination findings similarly failed to corroborate his subjective allegations. For example, clinicians typically documented findings within normal limits throughout the relevant period, but for obesity and right knee and left shoulder tenderness. Generally, clinicians found Plaintiff had an independent, minimally antalgic gait. There was no objective evidence of muscle atrophy, spasm, or significant weakness, no bowel or bladder dysfunction, no neurological deficits and no chronic inflammatory signs.

The ALJ also explained she took into consideration that Plaintiff's treatment has been conservative, consisting primarily of prescribed medication, physical therapy, and a right knee cortisone injection. The ALJ pointed out that Plaintiff has not required surgery, strong prescription pain medication or the use of prescribed assistive devices, which is inconsistent with complaints of disabling pain. The ALJ determined the use of NSAIDs for pain and the limited course of treatment suggests his symptoms are not as intense and limiting as alleged. Despite Plaintiff's contention that the ALJ erred in considering this evidence, the regulations allow the ALJ to consider Plaintiff's level of treatment and use of medication in evaluating his subjective complaints, which the ALJ appropriately did so here. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ may consider medication and treatment); *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (an

impairment that is "controllable or amenable to treatment [does] not support a finding of total disability") (internal quotation omitted).

Plaintiff argues that he had shoulder surgery after the hearing, which undermines the ALJ's reliance on his pattern of conservative treatment. However, the evidence of Plaintiff's surgery was not before the ALJ, as it took place after the date of the ALJ's decision. The Appeals Council considered this evidence, but reasonably concluded that it would not change the ALJ's decision because it related to Plaintiff's condition after the relevant period. Further, the record shows that Plaintiff reported an increase in shoulder pain in June 2021 after he had been cleaning his gutters. The record also shows after surgery, by September 2021, Plaintiff reported significant improvement of his shoulder pain, which he rated at a one to two pain level out of a scale to ten.

Lastly, the ALJ found Plaintiff's daily activities to be somewhat inconsistent with the severity of symptoms and degree of limitation alleged because he essentially functions independently, provides care for his own personal needs, prepares simple meals, performs light household chores like mowing, handles his money, shops and drives.

The ALJ acknowledged Plaintiff's left shoulder and right knee impairments justify a reduction of his RFC, but properly found his allegations of disability are not consistent with the objective medical evidence or supported by evidence as a whole. Plaintiff argues the ALJ erred in this finding and should have been

16

precluded from relying on prior administrative medical findings in the record because they were created prior to the record being complete. However, those findings were made by medical sources after review of the objective findings in the record, directly related to Plaintiff's ability to perform work-related functions. The Eighth Circuit has held that an ALJ may consider and even rely on such findings when making the RFC determination. See *Bowers v. Kijakazi*, 40 F.4th 872, 875-76 (8th Cir. 2022) ("[C]onsidering the State agency physicians' opinions was not itself an error, because the ALJ must consider all relevant evidence. Nor was the ALJ's reliance on these opinions an error. . . . [T]he ALJ found that they were reliable because they are familiar with the disability evaluation process and its requirements and that their opinions were more consistent with the objective medical evidence in this case.") (citations omitted).

Regarding Plaintiff's mental impairments, the ALJ recognized his diagnosis and prescribed medications for bipolar, depressed, and panic disorder, attention deficit hyperactivity disorder, and anxiety. The ALJ acknowledged that Plaintiff began mental health counseling in June 2019, where he reported good and bad days, but was getting out of the house more and had recently applied for a job at General Motors. During the session, Plaintiff was dressed and groomed appropriately, and was oriented and engaged in conversation. The ALJ described several mental health sessions. For instance, during April and May 2020, Plaintiff struggled with increased irritability, reporting he needed a new psychiatrist because

17

his had passed away. He complained of increased anxiety due to thinking about returning to work. During the May session, he was again alert and oriented, engaged in conversation, without suicidal or homicidal ideation, and dressed and groomed appropriately. During a June 24, 2020 session, Plaintiff indicated he had started a new medication that caused nausea, which had resulted in increased anxiety and depression. He was told by General Motors that he was hired, but claimed that when he met with the doctor, he was told the medicines he was on would make him ineligible. During his July 22, 2020 counseling session, Plaintiff was again alert and oriented, with no evidence of thought disorder, and engaged in conversation. Plaintiff's August and September 2020 counseling note continued to show unremarkable mental status examination findings.

The ALJ also thoroughly detailed Plaintiff's psychiatric evaluations by Clarity Healthcare, who diagnosed him with bipolar disorder, current episode depressed, without psychotic feature and agoraphobia with panic disorder in April 2020. During a follow-up examination on June 2, 2020, the ALJ recognized Plaintiff complaints that he was not sleeping well, had been more irritable and short-tempered, was depressed and still had days when he did not function. However, the mental status examination at this telephone visit indicted he was cooperative and oriented with no evidence of thought disorder, with a depressed, anxious, angry, irritable mood, but with full affect, clear speech, and normal insight and judgment. The ALJ explained Plaintiff's medications and how

adjustments were made to help him more and decrease his side effects. Between October and December, 2020, he exhibited irritability, a depressed mood, and impaired attention/concentration, but generally had normal examination findings.

After this discussion, the ALJ considered the prior administrative medical findings of the State agency psychological consultants Kim Stalker, Psy.D. and Mark Altomari, Ph.D., generally persuasive. The ALJ noted their findings were generally consistent with the objective medical evidence and supported by the mental status examination findings and the evidence as a whole. However, the ALJ also determined that later evidence submitted suggested additional limitations, which she included in the RFC determination. Specifically, the ALJ determined Plaintiff could maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work- related decisions. He could not work at a fast pace such as an assembly line but could stay on task and meet reasonable production requirements in an environment that allowed him to maintain a flexible and goal-oriented pace. Plaintiff was further limited to work that requires only occasional changes in the work setting which are introduced gradually, and he could occasionally interact with co-workers and supervisors. Plaintiff could not interact with the public, but he could tolerate superficial contact with the public. Plaintiff was also limited to occasional use of public transportation. These numerous limitations accounted for the moderate functional restrictions stemming from Plaintiff's mental impairments.

The ALJ concluded a June 9, 2020 medical source statement by Dr. Spalding, indicating Plaintiff was not capable of working full time, was a conclusory statement that was not persuasive. The ALJ also considered a December 22, 2020 mental medical source statement of Dr. Spalding, indicating multiple marked mental limitations, to be unpersuasive and unsupported by the record. Plaintiff argues the ALJ erred in rejecting Dr. Spalding's opinion that Plaintiff is disabled.

Here, the ALJ appropriately evaluated Dr. Spalding's opinion as required under 20 C.F.R. § 404.1520c. The ALJ explained Dr. Spalding's December opinion is deficient because, among other things, it does not articulate an objective medical basis for the marked limitations, and is inconsistent with the psychiatrist's own medical treatment records and the conservative treatment rendered. The record showed Plaintiff was treated with medication, which was adjusted based on his reports of efficacy and side effects. The ALJ also found the opinion is inconsistent with the other objective medical evidence of record and is unsupported by the generally unremarkable mental status examination findings and the evidence as a whole, including the claimant's daily activities. For example, the ALJ acknowledged that Plaintiff often reported significant symptoms, but mental status examination findings do not support his claims. The ALJ explained in more detail that most examinations were normal, but reference general symptoms, like being depressed, anxious and irritable. The more problematic symptoms, like thought

20

processes, cognition, memory, attention, concentration, insight, and judgment were generally normal. As to social limitations, despite Plaintiff's allegations, he is able to grocery shop, apply for a job and get hired, and was able to effectively interact with numerous health care providers, including physical therapy and mental health counselors, which are generally fairly interactive. *See Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) ("[A]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.").

The ALJ properly considered the medical opinion evidence and applied the pain standard based on Plaintiff's subjective complaints. However, the ALJ's decision to discredit those complaints was in conjunction with the record as a whole, which the ALJ adequately explained with good reasons supported by substantial evidence. Further, all the relevant evidence supports the ALJ's RFC determination. The ALJ acknowledged Plaintiff's impairments, which warrant some work restrictions. Substantial evidence is not a high bar; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson,* 361 F.3d at 1070 (citing *Ingram v.*

*Chater*, 107 F.3d 598, 601 (8th Cir. 1997). She examined the entire record, and her opinion is substantially supported by the evidence before her.

**Conclusion**

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 10th day of May, 2023.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE